## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBENSON LAFONTANT** | * CIVIL ACTION |
| | * |
| **-VERSUS-** | * NO.: 24-2536 |
| | * |
| **COOLIDGE – CLK ST. GERMAINE, LLC, ET AL.** | *SECTION"E"(4) |
| | * |

************************************************************************

## <u>AMENDED PETITION FOR DAMAGES</u>

**NOW INTO COURT,** through the undersigned counsel comes Robenson Lafontant, and upon suggesting to this honorable court that Plaintiff wishes to submit a complaint and petition for damages in this matter, respectfully represent the following:

### <u>I. THE PARTIES</u>

1.  Made Plaintiff herein (hereinafter also collectively referred to as "Plaintiff") is the following:

    a.  **ROBENSON LAFONTANT** (hereinafter also referred to as "Lafontant") is an adult citizen of the State of Louisiana and is domiciled in Jefferson Parish, which is this District.

2.  Made Defendants herein (hereinafter also collectively referred to as "Defendants") are the following:

    a.  **COOLIDGE-CLK ST. GERMAINE, LLC,** a Delaware limited liability company, authorized to do and doing business in the State of Louisiana, with its Principal Business Establishment located at 2201 Manhattan Blvd., Harvey, Louisiana 70058, and whose agent for service of process is Corporation Service Company, 450 Laurel Street, 8th Floor, Baton Rouge, Louisiana 70801.

b. **COOLIDGE - CLK ST. GERMAINE REALTY CORP,** a Delaware Corporation and one of the managing members of **COOLIDGE - CLK ST. GERMAINE LLC,** is authorized to do and is doing business in the State of Louisiana, with its Principal Business Establishment located at 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808, and whose agent for service of process is Corporation Service Company 450 Laurel Street, 8th Floor, Baton Rouge, Louisiana 70801**.**

c. **CLK MULTIFAMILY MANAGEMENT, LLC,** a Delaware limited liability company, authorized to do and is doing business in the State of Louisiana, with its Principal Business Establishment located at 450 Laurel Street, 8th Floor, Baton Rouge, Louisiana 70801, and whose agent for service of process is Corporation Service Company, 450 Laurel Street, 8th Floor, Baton Rouge, Louisiana 70801.

d. **COOLIDGE KOENMAN**, an entity of unknown character believed to be the same as that of the parent company for the **COOLIDGE-CLK ST. GERMAINE, LLC and/or CLK MULTI FAMILY MANAGEMENT, LLC**., in whose name the policy of insurance is written, which upon information and belief is the same policy that provides property and liability coverage for the acts of the CLK Defendants.

[Defendants a-d, are collectively referred to as "CLK" or "CLK Defendants"]

e. **ASPEN AMERICAN INSURANCE COMPANY,** a foreign insurance company, that is domiciled in North Dakota, with a principal mailing address of 175 Capital Boulevard, Rocky Hill, Connecticut 06067, whose agent for service of process is the Louisiana Secretary of State, located at 8585 Archives Avenue, Baton Rouge, Louisiana 70809 and who, upon information and belief, is an insurance company which at all times relevant herein provided property and liability insurance for the negligence or other faults of the

CLK Defendants and their employees and assigns.

## II. JURISDICTION

3. Jurisdiction is founded on 28 U.S.C. §§ 1332 which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

4. As demonstrated in the following paragraphs, there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.  Plaintiff ROBENSON LAFONTANT was domiciled in the State of Louisiana at the time of filing, and, upon information and belief, remains so at the time of removal.

6. On belief and information, Defendant CLK MULTIFAMILY MANAGEMENT, LLC is a Delaware limited liability company whose sole member is Craig Koenigsberg. Craig Koenigsberg is an individual who is domiciled in the State of New York.

7. On belief and information, Defendant COOLIDGE – CLK ST. GERMAINE, LLC is a Delaware limited liability company whose members are:

   a.  Coolidge – CLK St. Germaine Realty Corp. is a  Delaware limited liability company with the following members:

   b.  Coolidge Six, LLC. – a Delaware corporation whose principal place of business is in New York whose members are the following:

      i.      Coolidge Six Corp – a Delaware corporation whose principal place of business is in New York.

      ii.     Estate of Howard Parnes – an estate is a citizen in the state in which the

administrator is domiciled.

The Administrator of Defendant COOLIDGE – CLK ST. GERMAINE, LLC is a natural person domiciled in New York.

Accordingly, COOLIDGE CLK ST. GERMAIN, LLC is not a citizen of Louisiana as none of its members are citizens of Louisiana and the company is domiciled in Delaware.

8.  On belief and information, Kings Mountain V, L.P. is a Delaware limited partnership with the following partners:

   a. Kings Mountain V, Inc. – a Delaware Corporation whose principal place of business is in New York;

   b. CK Realty Associates, LLC – a New York limited liability company whose members are all citizens of the state of New York;

   c. Archon Koeningsberg Associates, L.P. is a New York limited partnership whose partners are all citizens of the state of New York

   d. RCG Archon, LLC is a Delaware limited partnership whose partners are all citizens of the State of New York.

   e. Midwest F.H.T., LLC – a Delaware limited liability company whose members are all citizens of the state of New York; and

   f. DNJ 2016 Family Trust – a trust which is a citizen in the state in which the trustee is domiciled. The Trustee is a natural person domiciled in New York.

9.  Accordingly, Kings Mountain V, L.P. is not a citizen of Louisiana as none of its members are citizens of Louisiana and it was organized under the laws of the State of Delaware and is domiciled in Delaware.

10. On belief and information, Defendant COOLIDGE – CLK ST. GERMAINE REALTY

CORP is a corporation incorporated in Delaware and has its Principal Place of Business in New York.

11.    Accordingly, Coolidge – CLK St. Germaine Realty Corp is a citizen of Delaware and New York. 13. Defendant COOLIDGE KOENMAN, LLC (improperly named as "COOLIDGE COENEMAN") no longer exists as an entity. This LLC was dissolved in 2004. Even when it did exist, none of its members were citizens of Louisiana.

12.    On belief and information, Defendant, ASPEN AMERICAN INSURANCE COMPANY, is a corporation that is incorporated in Texas and has its principal place of business in New Jersey. Accordingly, Aspen is a citizen of either Texas or New Jersey.

13.    Defendant, CHERYL SAWYER, is a natural person who is domiciled in Louisiana. diversity.

## II. GENERAL ALLEGATIONS

14.    On or about, July 17, 2023, Plaintiff, **LAFONTANT** was a resident of the **COOLIDGE-CLK ST. GERMAINE, LLC** apartment located at 2201 Manhattan Boulevard, Apartment D108, owned by **CLK MULTI FAMILY MANAGEMENT, LLC** .

15.    **LAFONTANT** originally moved into the St. Germaine Apartments in February 2022 but was relocated to the apartment unit that is the subject of this complaint in November 2022.

16.    Upon being relocated to Apartment D108, the apartment unit which is the cause of this litigation (hereinafter also referred to as the "Apartment"), he noticed that there was no working stove, or dishwasher, constant moisture from dripping faucets, and the presence of mold in the bathroom.

17.    Plaintiff consistently complained about the deplorable conditions of the apartment to Cheryl Sawyer and an assistant by the name of Sofia, but the complaints fell on deaf ears.

18.   Plaintiff was forced to live in these deplorable conditions, continuously breathing in mold that was present in the apartment, and the same conditions existed even on the date of his wrongful and illegal eviction in January 2024.

19.   In about mid-January 2023, Plaintiff began to experience headaches, daily nose bleeds, bleeding from his eyes, respiratory illness, and difficulty breathing, and he sought and is still receiving treatment for his injuries but could not discern the cause at the time.  His constant need for medical attention eventually led to the loss of his job.

20.   On or about July 17, 2023, a police chase between a fugitive and the Jefferson Parish Sheriff's Deputies left the fugitive dead on the steps of **LAFONTANT'S** apartment and the shootout resulted in **LAFONTANT's** apartment being blood-splattered, bullet-riddled, with a broken front door that was unable to be locked and a sliding glass door was completely shattered.

21.    After repeated calls and visits to the property manager Cheryl Sawyer, requesting for her to clean the mess left by the deputies of the Jefferson Parish Sheriff's Office, which consisted of chards of glass, debris, bullet shell casings, she expressed a grave indifference to his requests.  It was the same when she was asked to repair the broken door, replace the shattered sliding glass door, and remove the bullets from the walls of the apartment.

22.   The condition remained the same until January 3, 2024, when Plaintiff was wrongfully evicted from the property.

23.   Defendants CLK  and Cheryl Sawyer's indifference to the well-being of Plaintiff's safety and concern can be traced back to Plaintiff's request to remediate the presence of mold that

was pervasive in the bathroom (and the source of Plaintiff's nosebleeds), which request was ignored.

24.    On or about October 16, 2023, three months after the event of July 17, 2023, as Plaintiff Robenson Lafontant showered, Michael Burrle (hereafter, "Offender"), entered the apartment of the Plaintiff, through an unlocked door that was not locked and could not be locked because of the damage occasioned to the door three (3) months earlier.

25.    The Offender located the keys to Plaintiff's vehicle and proceeded to steal Plaintiff's Fossil watch, BEATS Bluetooth headphones, a ring, and Plaintiff's wedding ring.

26.    Additionally, the Offender searched through Plaintiff's closet and stole clothing that the Offender adorned himself with and left his dirty clothing in exchange.

27.    The Offender then relocated to the parking lot Plaintiff's' apartment where he accessed and stole Plaintiff's 2008 Toyota Rav 4 , which parking lot is owned and operated by the CLK Defendants.  The Offender then contacted Plaintiff by phone and requested $700.00 in exchange for returning his car and keys.

28.     Plaintiff dialed 911 and was transferred to the Jefferson Parish Sheriff's Office, whose deputies came to the apartment complex and were on site to apprehend the Offender when he returned to the apartment complex to retrieve the money he tried to extort from the Plaintiff.

29.    Upon searching the vehicle prior to allowing Plaintiff access to it, the JPSO deputies discovered drugs, a firearm, and drug paraphernalia.

30.    Upon hearing this and knowing that the Offender was in possession of a firearm when he

accessed his apartment, it instilled terror in the heart and mind of Plaintiff, at the thought that the Offender was in such close proximity that he could have killed him.

31.    The Offender was arrested by JPSO deputies and detained and a Bill of Information was filed in the matter of *State of Louisiana v. Michael Burrle,* 24th JDC, Case No. 23-5293.

32.    After being released on a $100 Personal Bond Underwriting (PBU).  He has since contacted the Plaintiff on several occasions.

33.    On March 11, 2024, the court issued an attachment for the arrest of the Offender because he failed to appear for a hearing and remains at large to date.

34.     This occurrence further terrified Plaintiff all the more and only grew worse upon learning that Offender Michael Burrle was sentenced to 20 years at hard time on 06/10/2016 for vehicular homicide in the matter of *State of Louisiana v. Michael Burrle*, 24th JDC, Case No.15-00904, Section A, but was released on parole on or about January 20, 2020, after serving less than four (4) years.

35.    Plaintiff will show that incidents and the resulting injuries were caused solely by the negligence, fault, and want of care on the part of the CLK defendants and their employees ,agents and/or assigns in the following non - exclusive enumerated acts and omissions:

(a) Failure to ensure **LAFONTANT'S** peaceful possession of apartment G108;

(b) Failure to properly maintain the premises;

(c) Failure to adequately inspect and/or remediate the mold within the apartment;

(d) Relocating **LAFONTANT** to an apartment without properly inspecting it for hazardous conditions and defective appliances;

- 8 -

(e)  Placing  **LAFONTANT** in a perilous situation by failing to inspect, repair and/or maintain

the apartment;

(f)  Perpetuation of a known risk of harm;

(g)  Failure to exercise reasonable care to prevent the unreasonably dangerous condition

which caused the Plaintiff's injuries;

(h)  Failure to discover an unreasonable risk of harm;

(i)  Deliberate indifference when placed on notice of dangerous and unsafe conditions;

(j)  Failure to mitigate an unreasonably dangerous condition;

(k)  Failure to warn of the potential dangers;

(l)  Failure to provide a safe environment for **LAFONTANT;**

(m) Failure to exercise duty to keep premises in reasonably safe condition;

(n) Failure to conform his conduct to the appropriate standard in this particular situation;

(o)  Failure to exercise their duty to provide security and to maintain the premises in a

reasonably safe condition, as the criminal activity was foreseeable;

(p) Wrongful and constructive eviction of ROBENSON LAFANTANT, dating back to July 17,

2023, if not before as a result of guaranteeing his warranty of peaceable possession;

(q) Failure to provide Plaintiff with a warranty of peaceful possession as guaranteed under LA-

C.C. Art 2796;

(r)  Wrongfully evicting Plaintiff and demanding further payments of rent thereafter;

(s)  Damaging Plaintiff's credit by filing a false report with the credit bureau, having had

wrongfully and constructively evicting him, long before the actual eviction by the court on

January 3, 2024;

(t)  Committing other want of care, dereliction of duty, acts of negligence as may be determined

at trial including, but not limited to, Louisiana *Code of Civil Procedure Article 2315, et seq.* most notably *Civil Code Articles 2315, 2316, 2317, and 2320.*

36.    Plaintiff shows that the accident and the resulting injuries were caused by the gross negligence and want of care of the Property Manager, Cheryl Sawyer and other employees and agents of the entity defendants in the following non-exclusive enumerated acts and omissions:

   a.   Exposing Plaintiff to known environmental hazards;

   b.   Failure to remedy the environmental hazards after being placed on notice;

   c.   Reckless disregard for the health and safety of the property which was subject to environmental hazards;

   d.   Failure to act in a reasonable and prudent manner;

   e.   Failure to exercise reasonable care;

   f.   Grave indifference and failure to provide peaceable possession of the apartment unit;

   g.   Acting in a manner that became the legal cause of the Plaintiff's injuries;

   h.   Exhibiting substandard behavior that was the cause in fact of Plaintiff's injuries;

   i.   Acting in a reckless manner by expecting payment of rent after having evicted Plaintiff;

   j.   Reporting Plaintiff's supposed rent nonpayment to the credit bureau and keeping his security deposit;

   k.   Making a false reporting to the credit bureaus in violation of Fair Credit Reporting Act (15 U.S.C. §1681, which action may be brought in State or Federal Court);

33.    As a further result of the herein above-described incident and the negligence of the Defendants, Plaintiff **LAFONTANT** suffered serious personal injuries, both physical and mental in addition to loss wages, and is therefore entitled to recover damages, including

but not limited to:

a.  Physical pain and suffering, past, present and future;

b.  Mental anguish, past, present and future;

c.  Loss of enjoyment of life;

d.  Medical expenses, past, present, and future;

e.  Lost wages past, present, and future;

f.  Loss of earning capacity;

g.  Damages for fraudulently reporting him to the credit bureau;

h.  Damages for not warranting his right to peaceable possession;

i.  Attorney fees pursuant to 15 U.S.C§1681 n,o. and any other applicable statute; and

j.  Other injuries and general and special damages as may be proven at the trial of this matter.

### III. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### DENIAL OF PEACEFUL POSSESSION AND ENJOYMENT

34.   The CLK Defendants owe a warranty of peaceable possession to their tenants. Failure to

maintain a tenant in peaceable possession is a breach of the lease contract.[1]

35.   Landlords also have an obligation to prevent their other tenants from disturbing a tenant's

peaceable possession.[2]

36.   Failure to provide sufficient security to tenants may constitute a breach of the warranty of

---

[1]. La. C.C. art. 2682(3), 2700–2701.
[2].*See, e.g.*, La. C.C. art. 2700–2701; *Essen Dev. v. Marr*, 95-1344 (La. App. 1 Cir. 11/30/95), 687 So. 2d 98.

peaceable possession.[3]  Such warranty cannot be waived.[4]

37.   Lafontant was relocated to an apartment unit that that did not have a working stove or dishwasher and also had constant moisture from dripping faucets and the presence of mold in the bathroom.

38.   As a result of living in these deplorable conditions, Lafontant experienced headaches, daily nose bleeds, bleeding from his eyes, respiratory illness and difficulty breathing.

39.   On or about July 17, 2023, a police chase between a fugitive and the Jefferson Parish Sheriff's Deputies left the fugitive dead on the steps of **LAFONTANT'S** apartment and the shootout resulted in **LAFONTANT's** apartment being blood-splattered, bullet-riddled, with a broken front door that was unable to be locked and a sliding glass door was completely shattered.

40.   After repeated calls and visits to the property manager Cheryl Sawyer, requesting for her to clean the mess left by the deputies of the Jefferson Parish Sheriff's Office, which consisted of chards of glass, debris, bullet shell casings, she expressed a grave indifference to his requests, the same as when she was asked to repair the broken door, replace the shattered sliding glass door, and remove the bullets from the walls of the apartment.

41.   The condition remained the same until January 3, 2024, when Plaintiff was wrongfully evicted from the property.

---

[3]. *Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So. 2d 318, 320 (La. 1993) (vacating summary judgment for landlord where tenant was assaulted and robbed in the unlit parking lot of her apartment building); *Veazey v. Elmwood Plantation Assocs.*, 650 So. 2d 712 (La. 1994) (affirming damages award against management company where tenant assaulted in her apartment); *see also Wallmuth v. Rapides Par. Sch. Bd.*, 2001-C-1179 (La. 4/3/02), 813 So. 2d 341 (substantially reaffirming *Veazey* after the 1996 amendments to comparative fault articles).
[4]La. C.C. art. 2682(3); *Entergy La., Inc. v. Kennedy*, 2003 CA 0166 (La. App. 1 Cir. 7/2/03), 859 So. 2d 74; *Southpark Cmty. Hosp. v. Southpark Acquisition Co.*, 13-59 (La. App. 3 Cir. 10/30/13); 126 So. 3d 805, 815.

42.    CLK Defendants and Cheryl Sawyer's indifference to the well-being of Plaintiff's safety and concern can be traced back to Plaintiff's request to remediate the presence of mold that was pervasive in the bathroom (and the source of Plaintiff's nosebleeds), which request was ignored.

43.    Lafontant was the victim of burglary and car theft and was perpetually exposed to mold as well as other unsafe hazardous conditions which precluded him from peaceful possession of the leased premises.

**SECOND CLAIM FOR RELIEF**
**WRONGFUL EVICTION**

44.    On or about December 4, 2023, Plaintiff, received a notice of eviction with a trial date of January 3, 2024, which was filed in the matter of _St. Germaine Apartments v. Robenson Lafontant_, 1st Justice of the Peace Court for the Parish of Jefferson, Case No. E-2947-2023.

45.    The CLK defendants still expected payment of rent, when Plaintiff had been wrongfully or constructively evicted by being forced to live in sub-standard conditions, and definitely as a result of the CLK defendants' failure to have the doors repaired and the bullet holes repaired in the property.

46.    A landlord who evicts (actually or constructively) is barred from suing for or collecting future rent due under the lease.[5]

47.    Therefore, the CLK defendants owe Plaintiff the rent from the date of the wrongful eviction through the day of the actual eviction, or January 3, 2024, as well as a return of his security deposit.

---

[5] _Southpark Cmty. Hosp._, 13-59, 126 So. 3d at 819.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE FAIR CREDIT REPORTING ACT

48.     Shortly after being evicted, Robenson LaFontant credit was negatively impacted after the

        CLK defendants wrongfully, intentionally, and maliciously reported his nonpayment to the

        credit bureaus.

49.      In essence the CLK defendants filed a false report in violation of the Consumer Reporting

        Act and are answerable to the Plaintiff for damages occasioned by him, as a result.

50.     The false report was a violation of the Fair Credit Reporting Act.

51.     The false report has caused Plaintiff damages, in an amount yet to be ascertained but which

        will be shown at trial.

## FOURTH  CLAIM FOR RELIEF
## NEGLIGENCE

52.     Plaintiff hereby incorporates by reference all paragraphs of the General Allegations, and

        the allegations of all prior Causes of Action, as though fully set forth herein. 51.

53.     As owner or custodian of property Defendants had a duty to ensure Lafontant safe and

        habitable living conditions free from hazards and dangerous conditions.

54.     Defendants breached that duty by failing to exercise reasonable care.  Specifically,

        Defendants failed to ensure Lafontant's peaceful possession of apartment G108, failed to

        properly maintain the premises; failed to adequately inspect and/or remediate the mold

        within the apartment; failed to properly inspecting it for hazardous conditions and defective

        appliances; failed to repair and or maintain the apartment of a known risk of harm; failed

        to exercise reasonable care to prevent the unreasonably dangerous condition which caused

        the Plaintiff's injuries; failed  to discover an unreasonable risk of harm; failed to deliberate

indifference when placed on notice of dangerous and unsafe conditions; failed to mitigate an unreasonably dangerous condition; failed to warn of the potential dangers; failed to provide a safe environment for **LAFONTANT;** and failed to exercise duty to keep premises in reasonably safe condition and failed exercise their duty to provide security and to maintain the premises in a reasonably safe condition from criminal activity.

55.    Defendants have committed other  want of care, dereliction of duty, acts of negligence as may be determined at trial including, but limited to, Louisiana *Code of Civil Procedure Article 2315, et seq.* most notably *Civil Code Articles 2315, 2316, 2317, and 2320.*

56.    As a direct and proximate result of Negligence Defendants acts, and each of their conduct alleged above, Plaintiff has suffered and continue to suffer general and special damages in an amount to be determined according to proof at time of trial, which Plaintiff is informed and believe and thereon allege is in excess of the sum of $100,000.00.

57.    As a direct and proximate result of the conduct of Defendants, Plaintiff was exposed to environmental hazards and unsafe living  environment causing him physical pain, mental anguish, loss of enjoyment of life, medical expenses, loss wages and loss of earning capacity.

## FIFTH CLAIM FOR RELIEF
## INTENTIONAL  OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58.     The actions of Defendants outlined above have resulted in an intentional or negligent infliction of emotional distress on Plaintiff.

59.    CLK Defendants had a duty to provide adequate security and to maintain their premises in reasonably safe condition as criminal activity was foreseeable at the Leased Premises.

60.    Plaintiff had no door that he could lock and no protection from intruders such as the

Offender, because the sliding glass door still had not been replaced since the incident of July 17, 2023.

61. Foreseeability of a risk of harm is determinative of the facts and circumstances, for purposes of determining whether legal duty exists in a negligence action.

62. Specifically, the CLK Defendants failed to provide basic security to protect the Plaintiff from further acts of violence, when they failed to provide a door that locked and failed to replace the shattered glass door that could no longer secure the Plaintiff in his apartment.

63. As a result of Defendant's failure to replace Lafontant's door, a door that could not be locked, Michael Burrle entered his home and stole several of his personal and valuable possessions.

64. Lafontant later learned that Michael Burle was in possession of firearm when he entered his apartment and became aware that his life was in danger. As result, Plaintiff began to experience panic attacks nightmare, insomnia and constant fear of violence which was exacerbated by the constant presence of bullets lodged in the wall of his apartment which the CLK refused to repair.

65. Defendants' intentional or negligent infliction of emotional distress has caused Plaintiff harm in an amount that is yet to be fully ascertained but on belief and information is greater than $100,000.00

### SIXTH  CLAIM FOR RELIEF
### FAILURE TO MAINTAIN A SAFE ENVIRONMENT

66. The actions of Defendants above constitute a failure to maintain a safe environment.

67. Specifically, Defendants did the following:

a.      placed Lafontant in a perilous situation by failing to inspect, repair and or maintain the apartment;

b.      Defendants failed to exercise reasonable care to prevent the unreasonably dangerous condition which  caused the Plaintiff's injuries;

c.      Defendants failed to deliberate indifference when placed on notice of dangerous and unsafe conditions;

d.      Defendants failed  to mitigate an unreasonably dangerous condition;

e.      Defendants failed  to provide a safe environment for  Lafontant**;**

f.      Defendants failed    to exercise duty to keep premises in reasonably safe condition; and;

g.      Defendants failed to exercise their duty to provide security and to maintain the premises in a reasonably safe condition, as the criminal activity was foreseeable.

68.      Plaintiff was a victim of a crime due to the Defendants failed to provide a safe environment and has suffered several injuries.

69.    Defendants' failure to maintain a safe environment actions and omissions have caused Plaintiff harm in an amount that is yet to be fully ascertained but on belief and information is greater than $100,000.00.

## SEVENTH CLAIM FOR RELIEF
## DEFAMATION

70.    The Defendants have made various false statement about the Plaintiff that has was understood by all who heard or read them to be about Plaintiff and that were false.

71.    Among other things, Defendants have falsely represented to credit bureaus that Plaintiff owed to the Defendant past due rent.

72.   Defendants also have taken Plaintiff to court over overdue rent and other things Defendants claim they were owed by Plaintiff when they knew or should have known this to be false.

73.   Defendant employees have incessantly failed to take Plaintiff's complaint seriously and have represented him as a serial complainer, effectively calling Plaintiff a habitual liar.

74.   As result of Defendants' action, Plaintiff has suffered damages.

75.   Specifically, Plaintiff has suffered emotional distress and is entitled to  general and special damages as set forth herein.

76.   Defendants Defamation has caused Plaintiff harm in an amount that is yet to be fully ascertained but on belief and information is greater than $100,000.00.

## EIGHT CLAIM FOR RELIEF
## EXPENSES OF LITIGATION AND ATTORNEYS' FEES

77.   Plaintiff adopts, alleges and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

78.   Pursuant to Louisiana Law, Plaintiff also may recover attorney fees and expenses of litigation related to one or more of the other causes of action and for which Defendants are jointly and severally liable.

79.   Plaintiff is entitled to recover the expenses of this litigation including, but not limited to, attorneys' fees, for all of which Defendant are jointly and severally liable.

## IV. TRIAL BY JURY

80.   Plaintiff demands trial by jury.

## V.  PRAYER FOR RELIEF

   **WHEREFORE**, Plaintiff, Roberson Lafontant, prays that Defendants be duly cited to appear and answer this Petition; that Defendants be served with a copy thereof and that, after the

lapse of all legal delays and due proceedings had, there be judgment herein in favor of the Plaintiff, Roberson Lafontant, and against Defendants, for pain and suffering, mental anguish, emotional distress, past, present, and future loss of enjoyment of life and pursuit of happiness, and reasonable attorney's fees and court costs incurred in connection with the litigation of this matter. Plaintiff further prays that he be granted any and all such further relief for which he is entitled under the law.

Plaintiff also prays that Defendants be cited and served with a copy of this Petition and that, after all legal delays and due proceedings are had, that there be judgment rendered in favor of the Plaintiff Roberson Lafontant, and against Defendants, individually and jointly and severally, as well as their insurers.

Plaintiff further prays that this court award  general damages in amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff special damages in amount to be proven at trial.

Plaintiff further prays that this court award compensatory damages in amount to proven at trial.

Plaintiff further prays that this court Award her exemplary and punitive damages in an amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff the costs of this action together with reasonable attorney fees in an amount to be proven at trial, as provided for by law.

Plaintiff further prays that this court Award interest on all damages and attorneys' fees from the date of original judicial demand until paid for all damages that accrue as result of that Defendants' acts, plus legal interest on all damages from the date of the original judicial demand

until paid.

Plaintiff further prays that this court Grant such other and further legal and equitable relief as this court deems necessary and proper and adjudges after a trial is had herein.

Plaintiff lastly prays for other relief as appears just and proper to this Honorable Court.

Respectfully submitted,

**THE LAW OFFICES OF**
**PIUS A. OBIOHA & ASSOCIATES, LLC**

/s/Pius Obioha

_____
PIUS A. OBIOHA, BAR# 25810
1550 North Broad Street
New Orleans, LA 70119
Telephone: (504) 265-0437
Facsimile: (504) 265-0440
pius@obiohalaw.com
*Attorneys for Plaintiff*